P. B. QUALY v. C. K. JOHNSON.[1]

July 10, 1900.

Nos. 12,134—(164).

**Construction of Contract.**

A written contract construed, and *held* not to constitute a sale or mortgage of the property involved in this action.

**Claim and Delivery—Value of Use of Property—Pleading.**

The value of the use of property may be recovered, as damages for its wrongful detention, when properly pleaded. Such damages are special, and must be specially pleaded. But when not so pleaded, and the parties litigate the question as though a proper issue in the case, and evidence in reference thereto is offered by both parties without objection that the pleadings are insufficient, the want of proper allegations on such questions cannot be raised by an exception to the charge of the court to the jury.

**Charge to Jury—Question Litigated.**

It is not error for a trial court to charge the jury upon issues litigated by the parties without objection, even though such issues be not presented by the pleadings.

Action in the district court for Houston county to recover possession of four horses and two promissory notes or their value. The case was tried before Kingsley, J., who directed a verdict in favor of defendant, and the jury rendered a verdict assessing his damages by reason of the taking and withholding of possession at

[1] Reported in 83 N. W. 393.

$297, and the value of the property at $250. From an order deny-ing a motion for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Affirmed.

*Duxbury & Duxbury,* for appellant.

*James O'Brien,* for respondent.

BROWN, J.

This is an action in claim and delivery for the possession of four horses claimed to be wrongfully detained by defendant. At the trial in the court below the court directed a verdict for defendant, and plaintiff appeals from an order denying his motion for a new trial.

The facts in the case are as follows: On February 13, 1899, plain-tiff was engaged in the livery business at Caledonia, this state. He owned and kept in said business eight horses, four single buggies, and robes, blankets, and numerous other articles of property usual-ly kept and used in such a barn. On that day he entered into a con-tract with defendant by the terms of which he conditionally sold the entire outfit to defendant for the consideration of $900. On the subject of the payment of this amount the contract provides as follows:

"The said party of the second part agrees to pay the said party of the first part the said sum of $900 as follows: To turn over to said first party one note for $125 from Kittel and George Johnson to said second party, and one note for $25 to said second party from Ole Guttormson, which are to be taken at their face value as part consideration hereof, and the sum of $25 per month until the sum of $475 is paid, with interest at six per cent.; and the said first party hereby agrees to take $300 of said purchase money in livery hire, at regular rates."

The contract contains various provisions and stipulations, not here material, and expressly reserves the title and ownership of the property in plaintiff until fully paid for by defendant, and concludes with the following:

"It is further agreed that the said second party [defendant] shall, on going into possession of said livery, furnish for use thereof four horses, which shall become a part of said livery, and a part of this contract."

Defendant took possession of the property under the contract, and placed in the barn four horses, in compliance with the above-quoted stipulation. He retained the property but two days; returning it, except his own horses, to plaintiff on the third day after the contract was made. He did not redeliver the property to plaintiff personally, but, in his absence from home, delivered the key to the barn to his wife. Upon returning to his home, and within four days after the sale, plaintiff resumed possession of the property, and, after securing possession of the horses in question by the replevin proceedings in this action (the same being the horses so agreed to be put into the barn by defendant), sold the entire outfit, including these horses, to one Finley for the sum of $500. Defendant so abandoned the property and returned it to the plaintiff on the claim that he had the right to rescind the contract. Some of the property included in the sale was taken from him by third persons on claims against plaintiff. Defendant became convinced that he had made a bad bargain, and his object in returning the property was to rescind the contract.

Two main questions are presented for our consideration: (1) Is the plaintiff the owner and entitled to the possession of the horses? If not, (2) did the court err in charging the jury as to defendant's damages?

1. The contention of appellant with respect to the first question is that the title to the horses passed to him by virtue and force of that portion of the contract by which defendant agreed to furnish them for use in the livery, and that, in legal effect, he conditionally resold them to defendant with the other property, so that defendant held all the property under such conditional sale. He further contends that defendant's abandonment of the property, and refusal to carry out the contract, operated as a default on his part; thereby giving plaintiff the right to retake possession under the contract for the purpose of enforcing payment of the purchase price.

There is no question but that prior to this transaction the horses in question belonged to defendant, and, if plaintiff ever acquired any title thereto, it was by force and operation of this contract. Counsel argued appellant's contention with much ingenuity, but the facts are against them. We are unable to discover any reason

whatever for sustaining their view. If the title to the horses passed to plaintiff, it must have been as part payment of the purchase price of the livery outfit, and upon no other theory or claim can plaintiff predicate title. And that theory is certainly groundless. The purchase price of the property was $900, and the manner of the payment is specifically pointed out, and these horses are nowhere mentioned in that connection. Plaintiff himself did not understand that the title to these horses passed to him. He testified that they were put in as security for the performance of the contract. But the contract does not sustain that theory. There is no language in the writing which can be construed into a chattel mortgage upon these horses. The contract, it is true, is not clear or free from doubt. It was evidently not drawn by a legal hand. But, giving it the most broad and liberal construction, it cannot be held as transferring the horses in question to plaintiff, or as mortgaging them to him as security for the performance of the contract.

It follows that plaintiff had no title to the horses, and no right to the possession thereof, at the time the action was commenced, and the court correctly directed a verdict for defendant.

2. The court below charged the jury that defendant was entitled, as damages, to the value of the use of the horses from the time taken in the replevin proceedings to the time of trial; and this is assigned as error.

The plaintiff obtained possession of the horses at the commencement of the action, and they were not returned to defendant. The answer of the defendant asserted his ownership and right to the possession of the horses, alleged that the value of their use was four dollars per day, and demanded their return, together with such value as damages. No objection was made to the sufficiency of the answer as to damages, nor was any objection made to the evidence offered to prove such damages. Such evidence was received without objection, and plaintiff offered evidence on the same subject. It is very well settled in this state that

"In an action for claim and delivery, where the subject-matter of the action has a usable value, the reasonable value of the use of it during the time of its wrongful detention may be properly shown and considered in the assessment of the damages for such deten-

tion." Williams v. Wood, 61 Minn. 194, 63 N. W. 492; Sherman v. Clark, 24 Minn. 37.

The charge of the trial judge was in line with this rule and the theory of the trial of the case, and was not erroneous. It is true that such damages are special, and must be specially pleaded, and that they were not so pleaded in this case. Ferguson v. Hogan, 25 Minn. 135. But no objection was made in the court below that the damages were not specifically pleaded, the cause was tried as though the question was a proper issue in the case, and plaintiff cannot now complain. Erickson v. Fisher, 51 Minn. 300, 53 N. W. 638; Howland v. Fuller, 8 Minn. 30 (50). The argument of counsel for appellant on this branch of the case, and their suggestion as to the proper rule of damages in cases of this kind, are not without merit; but, if a change is to be made in the rule heretofore followed, it should be made by the legislature.

3. The plaintiff caused the deposition of one Van Leuven to be taken in his behalf. The notary before whom it was taken sealed it in an envelope, and forwarded it to plaintiff's attorneys, who retained the same in their possession until the day on which the case was tried. When offered in evidence, the court suppressed it because not returned and filed in conformity to law. Whether the court erred in this ruling or not (we are not prepared to say that it did), plaintiff is not shown to have been prejudiced by it. The deposition is not made a part of the record in this court, and it does not appear that it contained any material evidence. Error must be shown. We cannot presume it.

No other assignments of error require special mention.

Order affirmed.